**FALEAFAGA PENI, Plaintiff/Counterdefendant**

**and**

**PAOLO SIVIA, Intervenor/Counterdefendant**

v.

**GOVERNOR A. P. LUTALI, AMERICAN SAMOA
GOVERNMENT, AMERICAN SAMOA HOSPITAL
AUTHORITY, and UNITED CONSTRUCTOR, INC.,
Defendants/Counterclaimants**

---

**GOVERNOR A. P. LUTALI, AMERICAN SAMOA
GOVERNMENT, AMERICAN SAMOA HOSPITAL
AUTHORITY, and UNITED CONSTRUCTOR, INC., Third Party
Plaintiffs**

v.

**FALEAFAGA FAMILY, ALAMOANA S. MULITAUAOPELE, and
JOHN DOES 1-20,
Third Party Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 8-96

June 20, 1996

68

Before RICHMOND, Associate Justice, AFUOLA, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff/Counterdefendant and Third Party Defendants, Tautai A.F. Fa`alevao
For Intervenor/Counterdefendant, Tuana`itau F. Tuia
For Defendants/Counterclaimants/Third Party Plaintiffs, Cherie Shelton Norman

Opinion and Order:

This action concerns the status of the dispensary site in the Village of Amouli, American Samoa.

On May 20, 1996, plaintiff Faleafaga Peni ("Faleafaga"), who is the sa`o, the senior matai or chief, of the Faleafaga family, brought this action to declare the dispensary site to be his family's communal land and to permanently enjoin defendant American Samoa Government ("ASG") and the other defendants from using the dispensary site without his or successor sa`o's permission. The court issued a temporary restraining order preventing defendants from proceeding with the imminent ground breaking ceremony and construction of a new building on the dispensary site until further order of the court.

The order to show cause for a preliminary injunction came regularly for hearing on May 31, 1996. The immediate issues were then joined by defendants' answer, counterclaim, and third party complaint, and by intervenor's appearance without objection. After the hearing commenced, the court invoked T.C.R.C.P. Rule 65(a) to consolidate the trial on the merits with the preliminary injunction hearing. Evidence was received on May 31 and June 4, 10, 11 and 12, 1996. All counsel were present throughout the proceedings.

Since this action relates to a controversy over claimed communal land, the court also raised the jurisdictional absence of the certificate of irreconcilable dispute, issued by the Secretary of Samoan Affairs, under the mandate of A.S.C.A. § 43.0302. At the conclusion of the evidence, all parties stipulated to waive this requirement. Because the parties are neither contesting the communal nature nor competing for ownership of the reversionary interest in the dispensary site, the court accepts the stipulation and will decide the issues on their merits.

## DISCUSSION

In February 1990, Hurricane Ofa struck American Samoa and essentially obliterated ASG's dispensary on a one-quarter acre site in Amouli, among the extensive damage the hurricane caused. Pursuant to a deed of the site, ASG had operated the dispensary there beginning no later than April 1923. ASG added nurses' quarters to the site some time later. However, this building was extensively damaged in the hurricane of 1966 and has remained unoccupied by the dispensary staff, at least as living quarters, from then until the present time. Members of the Faleafaga and Paolo families of Amouli also continued to use the cultivated products of the land, respectively east and west of a hedge across the middle, as they had done in pre-dispensary times. No others made use of the site after the dispensary became operational.

After Hurricane Ofa, ASG resolved to replace the dispensary facilities. The U.S. Government earmarked federal grant funds for this project, totaling about $560,000, partially in 1993 and the balance in 1995. ASG has completed the design work for the new facilities, enlarged to replace both old dispensary structure and nurses' living quarters and occupy the entire dispensary site. Defendant United Constructor, Inc. has been, or is about to be, contracted to construct the new facilities at a price of about $470,000.

In April 1993, ASG representatives met with Faleafaga and other Amouli villagers to discuss the dispensary reconstruction program. Faleafaga then first learned that the 1923 deed of the dispensary site to ASG was signed by Utu, without using any given name, and not by his sa`o predecessor, and that ASG held the view that the dispensary site was now ASG land and was originally owned as communal land by the Utu family of Amouli.

Faleafaga embarked on a campaign to attain recognition of the east side of the dispensary site as the Faleafaga family's communal land. When his discussions with ASG representatives failed, and since he was physically

70

incapacitated, he designated third party defendant Alamoana Mulitauaopele ("Alamoana"), a family member, as his attorney in fact to deal with the matter. Alamoana, on Faleafaga's behalf, obtained a survey of the Faleafaga part of the site and offered to register the surveyed area, pursuant to the title registration laws, A.S.C.A. §§ 37.0101-37.0120. The Territorial Registrar issued a certificate of registration of the title to this area as the Faleafaga family's communal land on May 19, 1994. The stage was thus set for this action, precipitated by ASG's announced construction date.

Unfortunately for Faleafaga, the title registration of the east side of the dispensary site is invalid. "Only the senior matai of a Samoan family has the authority to request a survey of communal property of that family." A.S.C.A. § 37.0102(d). This language is unconditional and unequivocal; no exceptions. *Faleafine v. Suapilimai*, 7 A.S.R.2d 108, 113 (Land & Titles Div. 1988). The sa`o cannot delegate this authority. *Poumele v. Ma`ae*, 2 A.S.R.2d 4, 5 (App. Div. 1984). This legal result, however, does not settle the issue of communal land ownership in this action.

Although the sa`o title Utu was vacant during the period of Faleafaga's efforts, and still is, no member of the Utu family objected to Alamoana's purported title registration on Faleafaga's behalf, and no member has intervened in this action to claim the dispensary site as the Utu family's communal land. A member did testify that the entire dispensary site is the Utu family's communal land. He essentially based this testimony on the premise that because Utu is the highest ranking matai in Amouli, and because both Faleafaga and Paolo, as well as members of several other Amouli families, are blood-related to the Utu family, most, if not all, lands in Amouli, including the dispensary site, are the Utu family's communal lands. Faleafaga and Paolo's son disputed this conclusion and asserted that despite the blood connection, their and the other Amouli families and their sa`o titles are distinct from the Utu family and own separate communal lands.[1] Decisions of this court support the Faleafaga and Paolo viewpoint. *See Faleafaga v. Utu*, LT No. 23-84, slip op. (Land & Titles Div. May 9, 1984), aff'd *Utu v. Faleafaga*, AP No. 23-84 (App. Div. April 4, 1985) (remanded to memorialize a survey); *Utu v. Paolo*, 23 A.S.R.2d 22 (Land & Titles Div. 1992), aff'd *Paolo v. Utu*, AP No. 26-92, slip op. at 1 (April 5, 1994).

---

[1] Faleafaga, Paolo, and the Utu family witness are candidates for the vacant Utu matai title. Presently, Paolo is off-island for medical treatment.

Based on the evidence as whole, including but not limited to the Utu family's inaction in the attempted title registration and this proceeding and unconvincing testimony by the Utu family member, we find that the dispensary site encompassed communal lands of the Faleafaga and Paolo families in 1923 and at all times since then.

In 1923, ASG was administered by the U.S. Navy. Prior to April 2, 1923, ASG and the village matai agreed upon locating a branch dispensary of the Samoan Hospital in Amouli. The matai were led by Utu Suaese, as the highest ranking chief in Amouli. The matai included Faleafaga Siai and Paolo, perhaps Paolo Leuila, although his title registration goes back to 1906. The matai selected the dispensary site on and split between the communal lands of the Faleafaga family, currently named Mata'ili'ili, and of the Paolo family, now called Amoamoniu. The dispensary building was constructed, mostly on the Faleafaga family's portion of the site. The nurses' quarters added later was located on the Paolo family's side. The hedge delineates the boundary between the two families' properties.

On March 22, 1923, the village matai personally positioned pins at the corners or points of the dispensary site, and the ASG surveyor determined the metes and bounds of the legal description. The Faleafaga and Paolo sa'o, or family members representing them, participated in this exercise. On April 2, 1923, the deed was executed to transfer title to the site. Utu Suaese, using only his matai title Utu, as grantor, and Governor Edwin T. Pollock and his successors in office, as grantees, representing ASG, signed the deed. The deed was recorded with the Registrar of Titles (now the Territorial Registrar) the same day.

By the deed, Utu Suaese, representing the matai and families of Amouli, including Faleafaga and Paolo, in consideration of one ($1.00) dollar, conveyed a fee interest in land to ASG to be "used for the purpose of maintaining thereon a branch dispensary of the Samoan Hospital." A handwritten page in the Registrar's file includes the statement "Land to revert on giving up of dispensary." Clearly, the parties intended to transfer title to the land to ASG, provided that ASG operated a dispensary on the site and did not abandon that operation. We also find that Utu Suaese represented the Faleafaga and Paolo families under the deed provision retaining the use of cultivated products.

Faleafaga and Paolo questioned certain formalities in the deed execution in their present effort to void the deed and require ASG to enter a new

agreement with consideration at current market values for any further use of the dispensary site.

First, they noted the absence of Utu's given name, but in the era when the deed was executed, matai commonly used only their matai name when signing legal documents. The Cession of Tutuila and Aunuu in 1900 and the Cession of the Manu`a Islands in 1904 are prime examples. Next, they pointed out the lack of any name of the land in the deed, but again this omission was commonplace during the era involved.

■■■ They sought to cast doubt on Utu Suaese's authority because he registered his matai title in 1924, and § 79.8 of the Code of Regulations and Orders for the Government of American Samoa (1937) ("1937 Code") prohibited the use of an unregistered matai name. The same complaint could be made of Faleafaga Siai, who did not register his matai title until 1925. If Paolo Leuila, who registered his matai title in 1906, was no longer in office in 1923, the next registered Paolo was Paolo Faaoli in 1943. It is unclear, however, when the prohibited use of an unregistered matai name was enacted. Registration of matai names was first decreed in 1906 by Regulation No. 8.1906, but the Regulation did not contain the prohibition. In any event, as important as formal matai registration is to the overall integrity of the matai system, § 79.8 only provided criminal sanctions. While judicially ordered consequences might be in order in some other situations, it would be inappropriate to vitiate 73 years later a legal document executed by parties who, in the absence of contrary evidence, apparently acted in good-faith belief in each other's authority.

■ Lastly, noting the survey on March 22 and deed execution only 11 days later on April 2, Faleafaga and Paolo alleged failure to comply with notice prerequisites before the deed was signed. In the first place, while alienation of communal land was prohibited in 1900 by Regulation No. 4-1906 and was still severely restricted by amendment to this Regulation in 1921, conveyances to the U.S. Government or ASG for governmental purposes were excepted. 1937 Code § 71.2. In 1901, land acquisition for public purposes was expressly covered in detail under Regulation No. 2-1901. 1937 Code § 72. When transfer agreements were entered into with land owners, the land was deeded to the Governor as the governmental representative, without any separate notice requirement. 1937 Code § 72.2. When no agreement was reached, a condemnation-type procedure, including notice requirements, was spelled out for land acquisitions. 1937 Code §§ 72.3-72.17. Thus, since an agreement was reached, no special

73

notice requirements applied. Moreover, the participating village matai had actual knowledge of the transaction.

The evidence does not indicate any legal impediment to the creation and continuing existence of ASG's title interest. Thus, ASG acquired, and still owns, a valid fee estate in the dispensary site, subject to termination upon a condition subsequent. Further, as between the parties to this action, the Faleafaga and Paolo families own the reversionary interest in the dispensary site as their communal land, respectively the east and west side of the hedge within the site, should ASG abandon the dispensary operation.

Although Paolo did not object to Alamoana's attempted title registration of the east portion of the site on Faleafaga's behalf, we observe that the surveyed boundary between the east and west sides of the site in the Faleafaga registration survey does not coincide with the hedge. However, the boundary between the Faleafaga and Paolo portions of the site was not joined as an issue in this action. Thus, while perhaps persuasive, our findings related to the hedge do not foreclose later resolution of any differences that may arise between the Faleafaga and Paolo families about the boundary between their portions of the site. Likewise, since the Utu family is not a party to this action by joinder or intervention, our findings on ownership of the reversion, however persuasive, do not preclude future litigation on the ownership of the dispensary site as between the Faleafaga, Paolo, and Utu families.

Finally, as between the parties to this action, the correct survey of the dispensary site is shown in the Amendment Survey of Amouli Dispensary, Drawing No. 2273, approved by ASG's Land and Survey Division on May 13, 1994, which was admitted in evidence as Exhibit No. 24.

ORDER

1. The 1923 deed is valid. ASG owns the fee estate in the dispensary site in Amouli, subject to termination upon the condition subsequent of ASG's abandonment of the dispensary operation on the site.

2. The Faleafaga title registration is invalid, and the Certificate of Registration is voided. As between Faleafaga and Paolo on one hand and ASG and the other defendants on the other hand, however, the Faleafaga

74

and Paolo families own the reversion in the dispensary site as communal land. The Faleafaga family owns the east portion and the Paolo family owns the west portion of the site. For present purposes, the north-south hedge through the site marks the boundary between the Faleafaga and Paolo properties. Faleafaga and Paolo may offer to register the title to their portions.

3. Faleafaga and Paolo are not entitled to any permanent injunction against ASG and the other defendants. The application for a preliminary injunction is denied. The temporary restraining order is set aside.

4. ASG and the other defendants may immediately proceed with construction of the new dispensary facilities on the site.

5. No monetary damages will be presently awarded.

6. The parties shall pay their own respective attorney's fees and costs.

7. The Territorial Registrar shall register the judgment and the Amendment Survey to Amouli Dispensary, Drawing No. 2273, of May 13, 1994. The Clerk of Courts shall transmit a certified copy of the judgment and survey to the Territorial Registrar for this purpose.

Judgment shall enter accordingly.

It is so ordered.